Good morning, Your Honors. May it please the Court, Vivian Fu for Petitioner Robert Smith. This case arises from the denial of a 2254 governed by the AEDBA. The District Court properly concluded below that Missouri v. Siebert is the clearly established law that applies to Mr. Smith's Miranda claim and that Smith was subjected to a deliberate two-step interrogation strategy designed to render Miranda warnings ineffective. It's uncontested that he was in custody and subject to interrogation at the time where Detective Hussey told him that he was suspected of being involved in a murder at the Lakeview Market. Does it make any difference with regard to the Siebert issue that some of the information that came out later was revealed before the warnings, but a big chunk of it wasn't, including the critical fact that he was the trigger man? But virtually all, he basically admitted that he ran into the store, he robbed the store, he identified Tyrone Patterson and Rumaan Richardson as his fellow partners in crime, he identified the getaway car, he described the guns that he had with, he admitted that he was armed, Tyrone was armed. But he denied being the shooter, didn't he? He denied being the shooter, but he drew diagrams placing himself at the scene of the crime, where everybody was, where the victim was, and this was a felony murder. I mean, this. Kagan. Well, I mean, one could maybe say yes, and assuming for now, because the district court found it and it's probably in the character of, I don't know if it's a fact-finding or not, so I don't know for a fact what the district court said about this, but assuming that this was a deliberate ploy for now, it's still the case that one could say that he was the shooter and was not admissible. But what about the non-overlapping material, i.e., I mean, maybe there's no way to do that divide, but I mean, the fact that he was the shooter, for example. Well, pursuant to Siebert, you know, it's viewed as one continuous interrogation and all of it should be excluded. You know, the Siebert court noted that it would have been reasonable to regard the two sessions before and after the warnings as a continuum and unnatural not to repeat, you know, at the beginning what he said at the point. But that's the point. Yes. So therefore, with respect to what he repeated, yes. But what about with respect to material that he didn't repeat because it wasn't he didn't say it before? Well, our position would be that pursuant to Siebert, the entire ---- I know the shared position, but I'm trying to find out, given the fact that this is an AEDPA case, why that's the case. Because he deliberately withheld the Miranda warnings. But that's a separate issue, isn't it? That's one of the questions. Once you answer that question, yes, then the second question is were the midstream Miranda warnings effective? And part of what you look at there, as I understand it, is the, as Judge Berzon has pointed out, the extent to which there was a full confession before as opposed to some of the information before and a fuller description, an inculpatory decision, a description after. Yes. That's correct. And then, but that's one of the factors is the overlapping of the two statements. The other factors are the timing and the setting of the first and the second, the continuity of the police personnel, and the degree to which the interrogator's questions treat the second round as continuous with the first. And all of these factors weigh in favor of suppression of the first. So you would say, therefore, that there was enough ---- There's enough objective evidence that he ---- So then, so here's my next. So let's assume all that now, okay? I'm just trying to run through it because you don't have much time. And so then he goes into the car and he's with his cohorts and he says whatever he says, a fair amount of it is directly inculpatory, including with regards to ---- I mean, less coherent, but directly inculpatory. And you assume in your brief that the fruits of the Poisonous Tree come in, but don't we have a real ethical problem with that? Well, and you don't discuss that at all in your brief. I guess first I want to emphasize that, you know, the Supreme Court has consistently recognized the, you know, the indelible and devastating impact of a full confession. So ---- Of course, he has a separate confession in the car, essentially. Yes. But without the ---- the crux of the prosecution's case was what he said to Detective Hussey. And, you know, the stuff in the car, it's not all that ---- I mean, without his confession, it's a little more difficult to ---- I acknowledged on that when I asked you the question, but I want to know, you'd only get to that issue if we first assumed that everything in the car would remain admissible, and that's what I want to know, at least for EDPA purposes, given the fact that there doesn't seem to be any clear Supreme Court law with regard to the fruit of the Poisonous Tree. And Miranda and whatever law there is, the Pantone case or whatever it's called, which is not ---- which is close but not the same, seems to run in the other direction. Yes, that is the obstacle in this case. And you didn't discuss it, which bothered me, because it made it difficult to evaluate. You know, our position would be that, you know, under Wong-Sung, you know, derivative evidence must be ---- I understand it, but I want to ---- this is an EDPA case, so I want to know what Where are we with regard to clearly established Supreme Court law so holding? Well, pursuant to the principles of Miranda, Siebert, Dickerson, which says ---- which basically states that, you know, Miranda is a constitutional ---- But Pantone then seems to say, at least the plurality opinion, that it's sort of constitutional for some purposes and not others. Or it's only constitutional with respect to what could be introduced and not this secondary question of, you know, derivative material. What do we do with Pantone, just specifically? Well, I think that had to do with the physical fruit derivative. I understand that, but it certainly suggests there's an open question here now. But that case also stated that it distinguished the fact that it wasn't a ---- the statement of the defendant and, therefore, didn't implicate the privilege against self-incrimination and that it was a weapon. So that was ---- I would distinguish it that way. So it's limited to physical evidence? That would be my ---- Do you have any case that suggests ---- that supports that or says that? No, I would ---- No. Or the opposite? Do you have any Supreme Court cases that apply the Fruits Doctrine to derivative statements? No. I would argue ---- When the problem is Miranda, not ---- I mean, that's the Petain problem. It's when the problem is Miranda, not an involuntary confession. Yes. I would argue that the general principle set forth in Miranda, in Siebert, in Dickerson, in Wong-Song, would get us to where we need to go. Well, the very equivocalness of Siebert seems to create a problem, too. If you really believed that, then the cat out of the bag doctrine would apply and you would never get to these complications about whether it was purposeful or not purposeful, right? Because it would always be the fruit of the tree, no? Well, I think that the difference in Siebert is that because it was ---- it was an intentional, and in this case as well. Well, that's right. But why ---- if the fruit of the tree doctrine just applied, it wouldn't matter if it were intentional, would it? Well, we would argue that. In this case, the fruit of the tree should apply because it's an intentional ---- it's an intentional, flagrant, purposeful, illegal misconduct on the ---- No, but I mean what they said in the car. I mean, that was intentional, too, in the sense that they put them in the car hoping they would do this, but no one made them do it. And you had a 4-hour time lapse? There was a 4 to 6-hour time lapse, but there's been case law that 4 to 6 hours is not enough to attenuate the 10. But it's a factor we would look at. It seems to have been, you know, a tactic to put these people in the car and bug them and hope they'd say all this stuff, but they happened to walk into a trap. Right. But the 4 to 6 hours, I mean, that ---- during that time, the other two were being interviewed and they were being played to tape. Right. But some of it ---- What do you do with the fact that while certainly some of what was said in the car was linked to the fact that they had heard the tape of what Mr. Smith had said, but some of it seems separate. I mean, he says, I never should have smoked the man. Yes, he does. And that doesn't have any kind of ---- that seems like a pretty direct statement of, it was me, unrelated to responding to questions about whether he had talked to police. Right. He does say that. I mean, we would argue that at a minimum the statements that refer back to his But even if you exclude those and you draw the line and say that I never should have smoked that person, that never should have went down, we would have just been arrested for a robbery, if that comes in, that sounds pretty powerful. Does that lead us to a harmless error result? And if not, how do we avoid it under AEDPA? Under AEDPA. This is the difficulty in this case. We can only play the hand that dealt. We appreciate that the record is not ---- Well, it's not exactly. This is the issue that keeps coming up. I'm sure we're going to hear it from the State again. Are we reviewing the State's harmless error decision or are we doing Brecht? We're doing Brecht, right? Yes. Ourselves. Yes. But we still have a problem. Yes. I mean, our position is that the erroneous admission of the confession led to a substantial and injurious effect on the verdict because the confession was so important to the prosecution. The prosecution basically said in closing, you know what, all you have to do is look at what he said, the statements out of his mouth, and contain all the elements of the felony murder. Were they referring only to what he said in this interview? Yes. Yes. The prosecutor was only referring to the confession. So the confession was really the crux of the prosecution's case. And if you take out the confession and you take out the statements that relate to the confession that were in the part of the recorded, you know, car conversation. All you have left is, I never should have smoked that. Right. Yeah. Which so difficult, of course. What you have is a different trial. You don't have this trial. Right. And the question is, what do you do with that? I mean, because it could be that somebody could have put out a trial just around the material in the car and done perfectly well at it. But that sort of wasn't this trial. Right. So that's the problem. So we're trying to imagine a trial that didn't happen. Yes. All right. You're out of time. We'll give you a minute and a rebuttal. Okay. Thank you. Good morning, Your Honors. May it please the Court. Prague Agarwal, Deputy Attorney General for Appelli. I'd like to start with the report and recommendation holding that the facts here were materially indistinguishable from Siebert. I'd like to start with the subjective intent here, the whether there was a deliberate two-step interrogation. Let me ask you something. Is that a – do we review that to know how? The facts of the district court. That's the conclusion of the district court in the habeas. I believe so. The district court's holding. And then here we would rely on the AEDPA standards for the State court's presumed ruling that Siebert did not apply to the facts here. And here we don't have any evidence that there was a deliberate two-step interrogation. In Siebert we had testimony from law enforcement that they were trained to use a two-step interrogation, that he purposely withheld Miranda to get a full confession, and then was trained to confront the suspect with the full confession after Miranda. Here we don't have any evidence of the – My question is what else was he doing? Sorry, I missed that. What alternative construction can you put on here? Justice Kennedy in the concurrence in Siebert says good police work requires multiple interviews, some, you know, some when you try to elicit incriminating statements. They knew that they had this tape from somebody directly implicating the guy. They knew that when they brought him in. Right. They had him in a police station. He – what were they doing if they weren't interrogating him, hoping he would say something before they Mirandized him? But the difference is they clarified that it was voluntary, that they clarified that he wasn't under arrest. They clarified that he could leave. And that's the difference because they weren't trying to trick – and Siebert, the suspect, was under arrest. They went at 3 a.m., arrested her at the hospital at her son's bedside, and brought her in and questioned her. And it – you know, he held her arm and he said, you did this, basically, you did this until she admitted she did it. Here we don't have that. We have it's voluntary. You're not under arrest. You're free to go. Again, before the questioning started, it's voluntary. You're free to go. You're not under arrest. And even before the – where the trial court rules that he turned custodial, even then he says, may I ask you a few questions? And again, the defendant said yes. So here the intent, the subjective intent of the officer does not seem to employ this two-step interrogation that Siebert said needs to be intentional. And you – just from the start of it, they didn't go out looking for this guy, actually. They went looking for his co-defendant, Richardson. They went to his house, and he happened to be there. They told him at that point it was voluntary. Now, if we look at the five factors the plurality sets out to determine whether it's a two-step interrogation, first is completeness and detail of the questions and answers in the first round. Here we don't have a complete confession. We don't have a lot of the details. We have a lot of lies, actually. He places the murder weapon in Tyrone's hands. He says he has the other gun. He says he didn't shoot anything. He left before any of the shooting. He says he knows about the shooting from a newspaper. He doesn't even really admit that there was a shooting. He says he was out. He was first out. In the store with a weapon in his hand and a weapon in his colleague's hand. Right. And he places the murder weapon in his colleague's hand. He says he does grab the cash, and then he leaves. He also, you know, initially lied about when he was arrested. He said he was arrested the day of the murder, knowing that the murder was on the 3rd. That has to do with what the police's subjective intent was. No, I'm saying that if we're looking at objective stuff, the plurality in Siebert looks at these five factors. But the factor has to do with the questions, not the answers. No. No, but the ---- Are you looking at the effectiveness of the midstream warnings? Exactly, because the law enforcement didn't wait until he elicited a full confession. So that's where I was going to go to, is that they stopped ---- Well, they didn't know whether that's all they were going to get or whether they were going to get more. Right. But in an intentional two-step, you would keep pushing. You would keep going until you got the two ---- you got a full confession, and then you would confront them, because you're intentionally ---- you're trying to get a full confession. They thought that's all he was going to get. He didn't know whether he was going to get anything else after that. I mean, he would have been perfectly ---- not perfectly happy, but happy with the confession that he got before the warnings. Well, he got a lot of lies. He also got a lot of confession. He did. But he didn't get the confession to the murder. It was ---- I just said that, but he didn't know he was ever going to get that. That's true. But then the second factor is the overlapping content. So here again, we don't have an overlapping content, because the pre-Miranda confession kind of because ---- I don't know if it's a full confession because some of it's lies. That stuff, you know, does not overlap with what happens post-Miranda when he does admit that he was the shooter. He does admit that, you know, there was a robbery. Even on what he said before the confession, before the Miranda warnings, he could have been convicted of murder, right? He could have, like, hypothetically. I mean, there ---- Not hypothetically. It was a felony murder. He does say that he doesn't know that the shots were fired. I mean, he doesn't say explicitly that ---- He went into a store with a gun in his hand, with an accomplice with a gun in his hand to rob somebody. Right. That's true. Who then got killed, right? Who then got killed, but not ---- at that point, he still hasn't pointed the finger at his cohort saying that he was the one who killed her, that he heard shots. But the policeman at the time he gave him the Miranda warning still had a felony. Right. That's true. But I think what I was going at is that we don't have that ---- we can ---- we don't have enough to infer a subjective intent, because there isn't that testimony that he did employ a two-step, because we don't have that ---- What else do you need? What else would you need to reach that inference that we don't have in this record? I think either direct testimony from the detective or actions that really are closer to Siebert, where they do have that full confession and then they confront him with that. But that's a different factor. Do you really mean that we couldn't infer or that the State court didn't infer and we can't say that's unreasonable? I think we can't say it's unreasonable, the State court's ruling. The trial court at the time wasn't ---- Siebert wasn't out at the trial court. So there is a bit of a discrepancy here. But we can assume that the Supreme Court, the California Supreme Court, in its reasoning, did apply Siebert. And it's a reasonable interpretation that they found ---- it's a reasonable holding that they found that there was no two-step interrogation here. There was no delivered two-step. There was no subjective intent. And, therefore, the facts here were distinguishable from Siebert. And that's a reasonable holding. But you don't need that to prevail. To no. You have a door number two. I have a door number two. The tape recording in the car. And I ---- the tape recording in the car. Now, here it's again the trial court here specifically says that Wong-Sun is not applicable to violations of Miranda. And that's a reasonable interpretation of Federal Supreme Court law at the time. Are there other habeas cases that reach that same result that you're aware of? No. I believe, you know, based on Patain and Elstad, which were the cases that the trial court might have referenced, the analysis would be, you know, voluntariness and coercion. Here, the statements in the car were completely voluntary. They weren't coerced by police. There was no police involvement in terms of questioning or interrogation. The statements were voluntary. In reading that conversation, it doesn't have the feeling that it's a compelled conversation. The appellant ---- But that's not what the Fruits Doctrine is. No. I'm saying if we're looking at Fruits being inapplicable as a reasonable understanding We're looking at whether it was independently a Miranda violation or involuntary. And it wasn't. Right. But the question is, does the Fruits Doctrine apply? And I believe it's a reasonable interpretation by the trial court that the Fruits No. That's the reasons you're saying, because the reasons you're saying have to do with whether it was independently coerced. Right. But it was almost as clearly as you can get, at least a lot of it. I mean, as Judge Rosenthal said before, some of it, maybe not, but most of it, a lot of it was a discussion of what they told the police. Right. There was a discussion. But that's as direct as you can get. In some ways. In some ways, a lot of it was him coming clean, feeling that he did the right thing by telling the truth. And ---- But it was all a discussion of the confession. Right. So if the confession was invalid, it's as closely connected into the confession as you can get. Most of it. Not all of it. Not all of it. I agree with that, that without ---- that they are discussing the jumping point for this conversation is the confession. However, one of the co-defendants, Tyrone, continually denies involvement even in the face of this confession. And, you know, appellant continues to discuss topics that weren't part of the confession. There's a lot in there that ---- Let's suppose it was all part of the confession. Does Wong-Sun apply or not? No. It was ---- well, it's reasonable to infer that it does not apply to this. The cases where Wong-Sun does apply, there's a Fourth Amendment violation. You know, Brown, Taylor, Dunaway, there was a Fourth Amendment violation followed by an interrogation. There, Wong-Sun applied here. It's a Miranda violation. So it's reasonable to infer that. Are there any cases in circuits or even State supreme courts holding that Wong-Sun doesn't apply to as opposed to, not as in Pat Chaney to physical evidence, but to post-Miranda statements that were directly influenced by un-Miranda statements? Are there any? What's the case law on this question? You'd think there'd be a fair amount of it, but I don't know of any. I'm not aware of the case law other than the Supreme Court case law, which is not clear on this. The question's never arisen. It's not gotten to the Supreme Court. Well, I know that. But what about in the circuits and in other habeas cases? What's that? But not in the circuits, not in other habeas cases? I haven't exhausted the research on that, so I wouldn't be ---- I wouldn't know exactly that answer. But I think the ---- here, under AEDPA, it is reasonable that the trial court determined that Longston was not applicable, and the Fruits Doctrine did not apply, and therefore the tape recording was in. I would just briefly like to make an argument that even if we somehow get that out, we get the confession out, that there is still harmless error, because not only ---- we do have Davis' testimony, and we do have the pretext phone calls. And, you know, it's the Brecht standard, so it's less than the Chapman standard. And Davis' pretext call is not a full confession, but there is ---- it's a quasi-confession. He discusses that it was a year ago, which was right. The timeline makes sense. He discusses he got rid of the murder weapon. He doesn't deny the shooting. And the other part is there ---- a lot of that's missing, the pretext calls, the transcript of it. There are references to other parts of the pretext call where they discuss it was like menace to society. And there's other parts, but ---- What do you mean there's other parts? There's the pretext call. We don't have the transcript of the pretext call. So we just have, you know, when they reference it in questions. Was it played to the jury? It was played to the jury. And the jury was provided a transcript. It's just not part of the record. But we do have that part where he does say it's a year ago, that they got rid of the murder weapon. And he does acknowledge it. And then we do have Davis' testimony that at the party the three of them were discussing the murder, that Appellant was the shooter, that, you know, Ramon Richardson was the driver, that him and Tyrone went in. And that's corroborated by eyewitnesses that there's two people that went into the store that ran out. They got into a car and drove away. But certainly you couldn't convict them based on this very vague ---- that stuff. I mean, the witnesses are saying, I didn't know who they were. So what good does that do you? Right. No, you can't convict them on the witnesses, but coupled with Davis' testimony and the pretext calls. But, I mean, as I observed before, what's very disturbing about this is that at some point you get to the point where you're trying to imagine a different trial. It's not this one, i.e., how would you put on a case without the confession, with all these little bits and pieces? That's not the case that was put on. It was a different case. It was a case where you had a confession and you had some stuff corroborating the confession. Anyway, your time is up. Thank you very much. Thank you. I'm just going to take a minute. With respect to Siebert applying and there not being any subjective evidence, you know, Justice Sotomayor said in Siebert that it would be a rare case that the police officer gets up there and basically says, I intentionally withheld giving up Miranda. So I think that you are probably never going to find that outside of Siebert. But all the objective evidence does point to a clear, you know, the only reason for him to do that is to get a confession. And he wasn't sure if Smith was the shooter or not, so he thought that, you know, he got the entire confession during the first half, gives Miranda rights, you know, and then, you know, he admits that he was the shooter later. With respect to the harmless error, again, I think that's the biggest hurdle for us. And the confession, as Judge Berzon said, without a confession, there's not the confession was the heart of the case. It was the heart of the prosecution. Without a confession, you don't have the same trial. You have this recorded tape recording in the car. And if you take out the statements that refer to the confession, you just have a bunch of stuff about, yeah, I shouldn't have smoked that guy, or a lot of generalities, but no identifying details of, yeah, maybe it was like menace to society, but there was no identifying, nothing to connect Smith to the specific crime, to the specific murder and robbery at the specific market. So our, you know, the erroneous admission of the confession did lead to a substantial and injurious effect on the verdict. Okay. Thank you both very much. Interesting case. The case of Smith v. Sherman is submitted. We will go on to Lopez-Olivares v. Holder.
judges: Rosenthal, Berzon, Clifton